This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **No. 28,467**

**RUSSELL GONZALES,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Eugenio S. Mathis, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant Russell Gonzales appeals his convictions for aggravated battery against a household member (deadly weapon), contrary to NMSA 1978, Section 30-3-16(C) (2008); aggravated assault against a household member (deadly weapon), contrary to NMSA 1978, Section 30-3-13(A)(1) (1995); tampering with evidence, contrary to NMSA 1978, Section 30-22-5(A) (2003); and aggravated battery against a household member, contrary to Section 30-3-16(A). We are not persuaded by any of Defendant's assertions of error, and we therefore affirm.

**Factual and Procedural Background**

Defendant was charged in February 2007 with multiple felonies arising out of several violent incidents involving his domestic partner, Paula Hern. On September 28, 2007, Defendant filed a motion to dismiss, alleging that he had not been able to take Ms. Hern's statement. In the motion, Defendant stated that he filed a notice to take Ms. Hern's statement on September 24, 2007. The notice specified that the statement would be taken on September 28, 2007, at 9:00 a.m. in the prosecutor's office. However, Ms. Hern did not show up. Additionally, the motion stated that Defendant had sought Ms. Hern's psychiatric and psychological records, and the records had not been provided by the State. Defendant argued that the failure to provide the records and afford him an opportunity to take Ms. Hern's statement denied him his right to confront the witness. On October 1, 2007, Defendant filed a

supplement to his motion to dismiss in which he stated that after filing the motion, the State informed him that Ms. Hern would be available for an interview at the prosecutor's office on October 1. When defense counsel arrived to interview Ms. Hern, the prosecutor informed him that she had missed her scheduled flight, had taken a subsequent flight, she was in Albuquerque, but was unable to get transportation to the prosecutor's office in Las Vegas, New Mexico.

The district court denied the motion to dismiss. At the hearing on the motion on October 3, the court noted that Defendant had not served a notice to take Ms. Hern's statement sooner even though Ms. Hern was on the State's witness list, and the defense was aware that she was a witness. The court also noted that Ms. Hern had testified at the preliminary hearing, so Defendant had some idea of what her testimony would be. The district court further noted that Defendant had not formally sought disclosure of the medical records, and the State could not be expected to guess that Defendant wanted them. The State made Ms. Hern available for a statement that afternoon. Prior to the start of trial, Defendant filed a motion in limine to prohibit the State from calling Ms. Hern as a witness after she refused to allow Defendant access to her medical records. Defense counsel argued that refusing the release of her medical information violated Defendant's right to confront the witness. The court noted its concerns that Defendant's counsel had not filed a motion to compel

3

disclosure of the records. The court granted the motion in limine and ordered Ms. Hern to produce the medical records Defendant sought before she would be allowed to testify.

At trial, Ms. Hern testified that on January 5, 2007, she and Defendant were having dinner at the home of their friends when they began to argue. The argument escalated to Defendant physically assaulting Ms. Hern. Ms. Hern went home after the friends stopped the fight. Defendant later returned to their home and became violent when she asked him to leave. Ms. Hern testified that Defendant retrieved a gun from the bedroom and hit her twice on the head with it, which caused her to bleed extensively from her scalp. Defendant then forced her into the shower to try to and stop the bleeding. The bleeding did not stop, and Defendant pulled Ms. Hern out of the shower by her hair and forced her to look in the bathroom mirror. Ms. Hern testified that Defendant then told her that she would die that evening and fired the gun at her reflection in the mirror. Ms. Hern testified that Defendant then forced her to clean up her blood in the area where the kitchen meets the living room. Ms. Hern testified that blood found in her home was her blood and that her two dogs were not the source of the blood.

Ms. Hern testified that there was no further physical violence until January 17, when Defendant grabbed her and shoved her face into dishwater and threw an ashtray

4

at her hitting her in the back. Later that day when Defendant was in a back room, Ms. Hern left and went to her sister's home. The following day, she sought medical attention. Janea Chavez, a nurse at Alta Vista Hospital, testified that she examined Ms. Hern in the emergency room on January 18, 2007. Nurse Chavez testified that Ms. Hern had new and old bruises on her body and lacerations on her head. Dr. Mel Olivares testified that he examined Ms. Hern at Alta Vista Hospital on January 18. Dr. Olivares testified that he observed two lacerations on her scalp, bruises on her nose and jaw, tenderness on her ribs and abdomen, and greatly restricted range of motion in her back and neck.

Officer Frank Casaus of the New Mexico State Police testified that he interviewed Ms. Hern at the hospital and observed injuries on her head and back and scratches on her neck. After interviewing Ms. Hern, he prepared an arrest warrant for Defendant, as well as a search warrant for the property where Defendant lived with Ms. Hern, and was present during the search. Sergeant Carlos Mendoza of the New Mexico State Police testified that he assisted in executing a search warrant for the residence where Defendant and Ms. Hern lived. Sergeant Mendoza testified that he observed two areas during the search that appeared to him to be blood. These areas coincided with Ms. Hern's statement as to where the blood would be found. Sergeant Mendoza testified that a presumptive test proved that the stain was blood, but the

presumptive test could not determine whether the blood was human or animal. No further testing on the blood samples was requested, therefore no further testing was done. Sergeant Mendoza also testified that three guns, a brown ashtray, and a piece of a broken mirror from under the bed in the master bedroom were recovered from the residence. Sergeant Mendoza further testified that officers found what appeared to be a bullet hole that went through the bathroom mirror and into the back of the wall of the living room, causing a protrusion.

The jury acquitted Defendant of kidnapping and convicted him of aggravated assault on a household member (deadly weapon), aggravated battery on a household member (deadly weapon), aggravated battery on a household member, and tampering with evidence. Defendant appeals. Additional facts are set forth later in this opinion.

**Analysis**

Defendant raises four issues on appeal. Defendant argues that (1) he received ineffective assistance of counsel, (2) he was denied his right to a fair trial due to cumulative error by the district court, (3) the prosecutor impermissibly vouched for Ms. Hern's credibility in rebuttal closing argument, and (4) his right to be free from double jeopardy was violated. We address each argument in turn.

**A.      Ineffective Assistance of Counsel**

"The test for ineffective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent attorney." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384. "To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

Defendant asserts that his trial counsel's performance was deficient in a number of ways. Defendant first argues that counsel failed to follow up on his pro se motion to waive the jury trial. The record indicates that Defendant had legal counsel at the time charges were filed against him in February 2007 and continuing thereafter. During that time, Defendant filed a number of pro se handwritten documents. The

record indicates that Defendant filed a pro se handwritten request for a bench trial on August 8, 2007. Neither the request nor the record indicates that defense counsel received or should have known about this particular request. Nor is there any indication in the record that the district court ever ruled on that motion or that defense counsel ever followed up on that motion. Based on the record before us, we cannot surmise why the request was not pursued. However, the decision whether to waive a jury trial is a matter of trial strategy. *See State v. Ciarlotta*, 110 N.M. 197, 201, 793 P.2d 1350, 1354 (Ct. App. 1990) (stating that "[t]he decision of whether to proceed with a jury is a tactical one"). "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). Defendant cites to Rule 16-102(A) NMRA of the Rules of Professional Conduct, which provides that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to . . . whether to waive [a] jury trial." Defendant asserts that trial counsel failed to act on his multiple requests to waive a jury trial. However, the record before us on appeal is insufficient to support this contention, and we are in no position to determine what Defendant and his attorney may or may not have discussed with respect to waiving a jury trial. We therefore cannot consider this claim. *See State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (filed 1998)

(stating that "[w]ithout a record, we cannot consider [a d]efendant's claim of ineffective assistance of counsel on direct appeal").

Defendant next asserts that trial counsel was ineffective because he failed to move for a change of venue on the grounds that Ms. Hern's father was a former judge in the city where the crimes occurred. However, we believe that a consideration of the various advantages and disadvantages of trial in a particular venue and whether a defendant will have his best chance with a local jury is a classic strategy decision. Consequently, here, it does not establish ineffective assistance of counsel. *See State v. Jordan*, 116 N.M. 76, 81, 860 P.2d 206, 211 (Ct. App. 1993) (stating that "this Court will not second-guess matters of trial strategy or tactics" and that the defendant "must prove both his counsel's incompetence and prejudice"). Additionally, Defendant has not established that a fair and impartial jury could not be empaneled or that the jury venire was prejudiced against him. Accordingly, we believe that Defendant has failed to establish ineffective assistance of counsel and prejudice. *See Duncan v. Kerby*, 115 N.M. 344, 348-49, 851 P.2d 466, 470-71 (1993) (stating that prejudice must be shown before a defendant is entitled to relief based on ineffective assistance of counsel); *State v. Chavez*, 2007-NMCA-162, ¶ 24, 143 N.M. 126, 173 P.3d 48 (stating that in order to establish ineffective assistance of counsel a defendant

must demonstrate that but for counsel's unprofessional errors, the outcome of the proceeding would have been different).  We therefore reject this claim.

Defendant argues that his trial counsel failed to submit a notice of alibi or a witness list and failed to properly investigate the case.  "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *State v. Orosco*, 113 N.M. 789, 797, 833 P.2d 1155, 1163 (Ct. App. 1991), *aff'd*, 113 N.M. 780, 788, 833 P.2d 1146, 1154 (1992).  Again, we will not second guess the tactics or strategy of defense counsel.  *See State v. Sanchez*, 120 N.M. 247, 254, 901 P.2d 178, 185 (1995).  Additionally, Defendant has failed to demonstrate that any potential witnesses were willing to appear and would have given favorable testimony. *See, e.g.*, *State v. Hernandez*, 115 N.M. 6, 18, 846 P.2d 312, 324 (1993) (rejecting a similar claim of ineffective assistance of counsel due to the defendant's failure to demonstrate that the putative witnesses would have been willing to testify and would have presented favorable evidence).  Additionally, we find nothing in the record to indicate a failure to investigate or that a viable alibi defense existed for the charges for which Defendant was convicted. *See Telles*, 1999-NMCA-013, ¶ 25 (stating that this Court will not review an allegation of ineffective assistance of counsel that depends on matters outside of the record).

Defendant next argues that his trial counsel failed to subpoena Ms. Hern, failed to timely file notice to take her statement, and failed to timely request her medical records. Defendant argues that, had defense counsel timely made these requests, the district court would have dismissed the case for the State's failure to make the witness available. However, we cannot say that the State would have failed to make Ms. Hern available for a statement had counsel timely filed a motion to take her statement pursuant to Rule 5-503(A) NMRA, which states that a party may obtain the statement of any person with information subject to discovery by filing a "notice of statement" not less than five days before the scheduled date of the statement. Additionally, we will not engage in speculation as to what the district court would have done. Defendant also asserts that his trial counsel's failure to make these requests timely resulted in a denial of his right to confront Ms. Hern. However, Defendant makes no specific showing how counsel's cross-examination of Ms. Hern would have been improved had counsel timely filed a motion to take her statement and timely filed a request for her medical records. Defendant has therefore failed to demonstrate prejudice. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."); *see also Chavez*, 2007-NMCA-162, ¶ 24 (stating that, in order to establish ineffective assistance of

counsel, a defendant must demonstrate that but for counsel's unprofessional errors, the outcome of the proceeding would have been different).

Finally, Defendant asserts that counsel was ineffective because he failed to question Officer Casaus about his testimony at the preliminary hearing in which he stated that some of the blood recovered from Defendant's house was not human blood. Defendant asserts that this would have furthered his theory of the defense which was that the blood in the home came from an animal and that Ms. Hern was lying about the source of the blood. However, we are in no position to determine whether cross-examining Officer Casaus about his statement at the preliminary hearing would have been effective. *See State v. Hester*, 1999-NMSC-020, ¶ 11, 127 N.M. 218, 979 P.2d 729 ("It is not the role of [an appellate court] on appeal to second guess trial tactics."). Counsel's failure to mention the investigating officer's prior testimony may have reflected a rational determination that any inconsistency with the State's blood evidence at trial was of such minimal value that it was not worth bringing to the attention of the jury. *See generally State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127 ("A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct.").

For these reasons, we hold that Defendant has not established a prima facie case of ineffective assistance of counsel. Defendant must pursue the issue, if at all, in a collateral proceeding. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel"); *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus[.]").

**B.    Cumulative Error**

Defendant argues that he was denied his right to a fair trial due to cumulative error by the district court. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828. Specifically, Defendant argues that the district court failed to inform the jury of the charges against him at the outset of trial, denied him his right to confrontation by

allowing the late disclosure of discovery, improperly instructed the jury that only charges for which there was sufficient evidence were being submitted, and improperly limited the parties to thirty minutes for closing argument. For the following reasons, we do not believe that Defendant was denied his right to a fair trial due to cumulative error.

Defendant first argues that the district court failed to inform the jury of the charges Defendant faced at the outset of the trial. Defendant did not object, and this issue was not preserved. *See State v. Varela*, 1999-NMSC-045, ¶¶ 25-26, 128 N.M. 454, 993 P.2d 1280 (holding that to preserve an issue for appeal it is essential that a party make a timely objection that specifically apprises the district court of the claimed error and invokes an intelligent ruling thereon). "On appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error." *State v. Wyman*, 2008-NMCA-113, ¶ 10, 144 N.M. 701, 191 P.3d 559. "A fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied." *State v. Dietrich*, 2009-NMCA-031, ¶ 52, 145 N.M. 733, 204 P.3d 748. "We may also conclude that a fundamental error has been committed upon a determination that a trial court's error was of such magnitude that it affected the trial outcome." *Id*. (internal quotation marks and citation omitted).

Rule 5-607(B) NMRA provides that, after the jury is selected and sworn in, "initial instructions as provided in UJI Criminal shall be given by the court[.]" UJI 14-101 NMRA in part requires the district court to inform the jury of the common name of the crimes for which the defendant is charged. Defendant asserts that the district court instructed the jury that "Defendant has been charged with several crimes and I will identify those for you at a later time." The State explains that the court's introductory instructions to the jury began with "Defendant ha[s] been charged with several offenses from kidnapping to aggravated battery on a household member." However, the district court did not later identify the common names of each crime charged.

We do not believe that this rises to the level of fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks omitted)). Defendant argues that the failure to instruct the jurors as to the common names of the crimes charged prejudiced his defense because the jurors did not have a proper framework in which to evaluate the evidence. However, the jury was given the elements instructions for the crimes charged prior to deliberations. Additionally, the

jury acquitted Defendant of kidnapping. *See State v. Lacey*, 2002-NMCA-032, ¶ 21, 131 N.M. 684, 41 P.3d 952 (stating that the fact the jury acquitted the defendant of three of five charges showed that it was able to carefully apply the law to the facts). For these reasons, we do not believe that the jury did not have a proper framework in which to deliberate, and we reject Defendant's claim of error.

Defendant next argues that he was denied his Sixth Amendment right to confrontation when the district court allowed the late disclosure of discovery by the State. Defendant argues that, due to the delay in obtaining Ms. Hern's medical records and her statement, his right to confrontation was effectively limited, and he was unable to test Ms. Hern's credibility, detect bias, or otherwise challenge the State's version of the facts.

We disagree. "Violation of the right to confront witnesses must work some prejudice to the defendant in order for there to be reversible error." *State v. Taylor*, 103 N.M. 189, 195, 704 P.2d 443, 449 (Ct. App. 1985); *see also State v. Griffin*, 108 N.M. 55, 58, 766 P.2d 315, 318 (Ct. App. 1988) (holding that the "[f]ailure to disclose a witness'[s] identity prior to trial in itself is not grounds for reversal" and that "[t]he objecting party must show that he was prejudiced by such non-disclosure"). We do not believe that Defendant has established that he was prejudiced, either by the late disclosure of Ms. Hern's medical records or by the inability to take her statement

before the start of trial. Defendant has not stated with any degree of specificity how his cross-examination of Ms. Hern would have been improved or how he would have prepared differently for trial had he been able to take her statement earlier or had earlier access to her medical records. *State v. McDaniel*, 2004-NMCA-022, ¶ 13, 135 N.M. 84, 84 P.3d 701 (determining that the defendant was not prejudiced by the late disclosure of a witness where he did not show how his cross-examination would have been improved with earlier disclosure or how he would have prepared differently for trial); *State v. Vallejos*, 2000-NMCA-075, ¶ 35, 129 N.M. 424, 9 P.3d 668 (determining that the defendant did not suffer prejudice from late disclosure of witnesses where the defendant did not explain how his cross-examination of the witnesses would have been improved without the late disclosure). In this case, Defendant was aware of Ms. Hern's preliminary hearing testimony prior to trial, he was able to take her statement before she testified, and he cross-examined her at trial regarding her version of the incidents. Under these circumstances, we do not believe that Defendant was denied his right to confrontation. *See State v. Setser*, 1997-NMSC-004, ¶ 19, 122 N.M. 794, 932 P.2d 484 (filed 1996) (rejecting the defendant's argument that she was denied her right to confrontation by the late disclosure of a witness where she was able to review the witness' statement at length

prior to trial, interview the witness before she testified, and conduct an extensive cross-examination).

Defendant also argues that the district court abused its discretion in denying his motion in limine to exclude Ms. Hern's testimony. We review the district court's decision allowing a witness to testify for abuse of discretion. *Vallejos*, 2000-NMCA-075, ¶ 32. In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: "(1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *State v. Mora*, 1997-NMSC-060, ¶ 43, 124 N.M. 346, 950 P.2d 789, *abrogation on other grounds recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

Considering these factors, we do not believe the district court abused its discretion in allowing Ms. Hern to testify. Defendant does not argue that the State's late disclosure of the medical records was intentional or that it acted to prevent him from taking Ms. Hern's statement prior to trial. Additionally, for the reasons discussed earlier, we do not believe that Defendant has established prejudice. Finally, it appears that the district court cured any potential prejudice by ordering the State to

18

turn over the medical records and to make Ms. Hern available for a statement before she testified. Under these circumstances, we determine there was no abuse of discretion in the trial court's decision to allow Ms. Hern to testify.

Defendant next argues that the district court committed fundamental error when it informed the jurors at the close of the evidentiary part of the case and before closing arguments that it was only submitting charges for their consideration which the evidence supported. Following the close of evidence, the district court stated to the jury:

> Ladies and Gentlemen of the jury I will now instruct you on the law that you will follow in this case. Ladies and Gentlemen I am going to advise you that the Defendant was charged with several counts. The State has elected not to proceed with certain counts and I have dismissed certain counts. You're not to concern yourselves why the State did that or why the Court decided the way that it did. It is my job to submit those crimes to you for your consideration which the evidence supports. So, there may be a break in the sequence of the crimes and you'll notice that as I read the instructions. But you are only to consider the crimes that you are specifically instructed on.

We do not believe that this constitutes fundamental error. *See Cunningham*, 2000-NMSC-009, ¶ 21 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks omitted)). Defendant argues that the court's statement impinged on the fairness of the trial by conveying its opinion regarding the

merits of the case. *See State v. Sanchez*, 112 N.M. 59, 66, 811 P.2d 92, 99 (Ct. App. 1991) ("A trial judge should studiously avoid making any remark or statement in the presence of the jury concerning factual issues or which may be construed as conveying his opinion concerning the merits of the case."). However, we do not view this as a statement that conveys the district court's view of the evidence. Further, the court's statement was not contained in the written instructions that were given to the jury. Additionally, the jury was given UJI 14-6006 NMRA, which states in part: "You are the sole judges of the facts in this case. It is your duty to determine the facts from the evidence produced here in court. . . . You are to apply the law as stated in these instructions to the facts as you find them, and in this way decide the case." The jury was also given UJI 14-5020 NMRA which states in part: "You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them." We presume the jury followed the instructions. *See State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134 ("We presume that the jury followed the instructions given by the trial court, not the arguments presented by counsel."); *State v. Sellers*, 117 N.M. 644, 650, 875 P.2d 400, 406 (Ct. App. 1994) ("There is a presumption that the jury follows the instructions they are given."). Also, as discussed earlier, the jury acquitted Defendant of kidnapping. *See Lacey*, 2002-NMCA-032, ¶ 21 (stating that the fact the jury acquitted the defendant of three

20

of five charges showed that it was able to carefully apply the law to the facts). We therefore do not believe that the district court's statement, even if improper, influenced the jury, and we reject this assertion of error. *See Sanchez*, 112 N.M. at 66, 811 P.2d at 99 (stating that a district court's statement reflecting upon the weight of evidence or credibility of a witness that it is likely to influence the jury is generally determined to be prejudicial).

Finally, Defendant argues that the district court erred by limiting the parties to thirty minutes for closing argument. Defendant asserts that the proper standard of review is abuse of discretion. However, Defendant did not make any objection to the limitation on closing arguments at trial, and we therefore review only for fundamental error. *See Wyman*, 2008-NMCA-113, ¶ 10 (stating that "[o]n appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error"). Defendant claims that, because of the time limits imposed by the district court, he was unable to address all of the charges and evidence, and this resulted in juror confusion. However, we see no indication in the record that the thirty-minute limitation on closing argument resulted in any prejudice to Defendant. Additionally, we believe Defendant's bare assertion that the limitation resulted in juror confusion is too speculative to constitute prejudice rising to the level of fundamental error. *See State v. Singleton*, 2001-NMCA-054, ¶ 19, 130

N.M. 583, 28 P.3d 1124 (finding no fundamental error where the defendant did not show prejudice); *see also Cunningham*, 2000-NMSC-009, ¶ 21 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (internal quotation marks omitted)); *Sanchez*, 120 N.M. at 253, 901 P.2d at 184 (stating that the district court has wide discretion in controlling closing arguments).

Because we reject all of Defendant's assertions of error, there is no cumulative error. *State v. Fike*, 2002-NMCA-027, ¶ 20, 131 N.M. 676, 41 P.3d 944; *see State v. Fry*, 2006-NMSC-001, ¶ 57, 138 N.M. 700, 126 P.3d 516 (filed 2005) (observing that where no error has been established, there is no basis for a claim of cumulative error).

**C.      Prosecutorial Misconduct**

Defendant argues that the prosecutor improperly vouched for Ms. Hern's credibility during rebuttal closing argument. Defendant did not object, and we therefore review for fundamental error. "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial, and we will reverse a conviction despite defense counsel's failure to object." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. "As with any fundamental error inquiry, we will upset a jury verdict only (1) when guilt is so

22

doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.*; *see State v. Barber*, 2004-NMSC-019, ¶ 16, 135 N.M. 621, 92 P.3d 633 ("[W]e . . . recognize that . . . the fundamental error doctrine . . . focuses less on guilt and innocence and more on process and the underlying integrity of our judicial system.").

Defendant takes issue with the following statements by the prosecutor during rebuttal argument:

> The simple facts as I just covered here . . . they point to the case, to the facts that this actually happened. It is not a fiction. She didn't make it up. Even if there was like five percent of what he's saying is all made up, it still, the actions happened. . . .
>
> They have no shame. This is all made up? This is [a] Hollywood movie? No, this is true. These things actually happened. She testified. Does she wish they never happened? I'm sure. Does she wish she never got into this relationship? Sure, but it happened. . . .
>
> If you see everything that she had reported, it's consistent to show that this really did happen. It's truthful, was honest, and really occurred in history, in time during those days between [January] fifth and the seventeenth.

Pointing in particular to the statements, "[s]he didn't make it up," "this is true," and "[i]t's truthful, was honest, and really occurred," Defendant argues that this constituted impermissible vouching for the credibility of the victim. We disagree. Generally speaking, vouching involves either "invoking . . . authority and prestige of the prosecutor's office or . . . suggesting the prosecutor's special knowledge." *State*

23

*v. Pennington*, 115 N.M. 372, 381, 851 P.2d 494, 503 (Ct. App. 1993). We see nothing in the prosecutor's statements to suggest that he was invoking the authority and prestige of his office. Nor do the comments suggest the prosecutor had special knowledge. Rather, the prosecutor's comments are sufficiently focused on the arguments that the other evidence and testimony in the case was consistent with Ms. Hern's testimony so as not to raise the concerns associated with vouching. *See id.* (observing that the prohibition against prosecutorial "vouching stems from concerns that such comments may lead a jury to rest its decision on the prosecutor's personal integrity or authority"). When the prosecutor's rebuttal argument is viewed in its entirety and in light of Defendant's closing argument, which was focused on suggesting that Ms. Hern's account of the incidents was not credible in that it constituted a "fantastic story," "too bizarre to believe," "stretch[ing] the truth to the breaking point," and untrue because it kept changing, the prosecutor's statements were an appropriate argument that the evidence supported Ms. Hern's version of the events. *Cf. id.* (determining that the prosecutor's reference to her ethical obligations followed by her assertion that the witness was not lying was impermissible vouching for the credibility of the witness). For these reasons, we hold that the prosecutor's statements did not rise to the level of misconduct.

In addition, even had error occurred, we do not believe that the prosecutor's statements rise to the level of fundamental error. There is no indication that the prosecutor's remarks deprived Defendant of a fair trial, and we again note that the jury acquitted Defendant of kidnapping, the most serious of the charges he faced. *Cf. State v. Wildgrube*, 2003-NMCA-108, ¶ 33, 134 N.M. 262, 75 P.3d 862 (determining that the defendant was not prejudiced by the prosecutor's isolated remark because the jury acquitted the defendant of one of the charges indicating that the prosecutor did not undermine the jury's ability to judge the evidence fairly).

**D.      Double Jeopardy**

Defendant argues that his right to be free from double jeopardy was violated when his sentences for aggravated assault and aggravated battery with a deadly weapon were enhanced by one year pursuant to NMSA 1978, Section 31-18-16(A) (1993). Section 31-18-16(A) provides that the basic sentence of imprisonment for a non-capital felony shall be enhanced by one year upon a finding that a firearm was used in the commission of the crime.

"Among its protections, the double jeopardy clause protects a defendant against multiple punishments for the same offense." *State v. Gonzales*, 2007-NMSC-059, ¶ 11, 143 N.M. 25, 172 P.3d 162. "In cases where the defendant is charged with violation of multiple statutes for the same conduct ("double-description" cases), we must determine whether the [L]egislature intended to authorize multiple punishments for the same offense." *Id.*; *see State v. Caldwell*, 2008-NMCA-049, ¶ 10, 143 N.M. 792, 182 P.3d 775 ("The sole limitation on multiple punishments is legislative intent." (internal quotation marks and citation omitted)). "Absent a clear expression of legislative intent, a court first must apply the *Blockburger* [*v. United States*, 284 U.S. 299 (1932),] test to the elements of each statute." *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991). "In applying the *Blockburger* test, this Court compares the elements of each crime with the elements of the other to determine whether the

26

Legislature intended separate punishments under each statute." *State v. Lee*, 2009-NMCA-075, ¶ 9, 146 N.M. 605, 213 P.3d 509. "In applying the *Blockburger* test, if we conclude that each statute requires proof of an element that the other does not, then a presumption arises that our [L]egislature intended for the conduct to result in separately punishable offenses." *Caldwell*, 2008-NMCA-049, ¶ 11.

In *State v. Charlton*, 115 N.M. 35, 846 P.2d 341 (Ct. App. 1992), this Court held that imposition of the firearm enhancement on a conviction for aggravated assault with a deadly weapon does not violate double jeopardy because the Legislature intended to impose multiple punishments. *See id.* at 40-41, 846 P.2d at 346-47 (determining that the aggravated assault with a deadly weapon statute and the firearm enhancement statute each contain an element that the other does not). In *State v. Gonzales*, 95 N.M. 636, 638-39, 624 P.2d 1033, 1035-37 (Ct. App. 1981), *overruled on other grounds by Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981), this Court determined that imposition of the firearm enhancement on a conviction for aggravated battery with a deadly weapon does not violate double jeopardy. *See State v. Gabaldon*, 92 N.M. 230, 234-35, 585 P.2d 1352, 1356-57 (Ct. App. 1978) (determining that imposition of a firearm enhancement on a conviction for robbery while armed with a deadly weapon did not violate double jeopardy).

27

Defendant argues that our case law can be distinguished and asks us to compare the elements of the offenses as stated in the jury instructions for aggravated battery and aggravated assault with the firearm enhancement jury instruction to determine whether the offenses require proof of an element that the other does not. Defendant argues that, because the jury was specifically instructed that it had to find that Defendant used a firearm in order to convict him of aggravated battery and aggravated assault, the crimes do not each contain a different element, and the offenses should merge. However, in determining whether the conviction of multiple offenses for unitary conduct violates double jeopardy, we examine the relevant statutes, not the jury instructions. *See State v. Franco*, 2005-NMSC-013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (stating that "[u]nder the *Blockburger* test, [appellate courts] compare the elements of the relevant statutes to determine whether the Legislature intended to authorize separate punishments under each statute"); *State v. Carrasco*, 1997-NMSC-047, ¶ 23, 124 N.M. 64, 946 P.2d 1075 ("We answer the question of whether the Legislature intended multiple punishments for unitary conduct by asking whether each statute proscribing the offense requires proof of a fact the other does not."). Defendant cites to no authority for his argument that the relevant inquiry is the jury instructions, and we therefore assume that none exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court

will not consider an issue if no authority is cited in support of the issue and will assume no such authority exists).  We therefore reject Defendant's argument that his right to be free from double jeopardy was violated by imposition of the firearm enhancement in this case.

**III.    Conclusion**

For these reasons, we affirm Defendant's convictions and sentence.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**