2007-NMCA-162

173 P.3d 48

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Kimberly Rose CHAVEZ, Defendant–Appellant.**

No. 25,490.

Court of Appeals of New Mexico.

Oct. 11, 2007.

Certiorari Denied, No. 30,733, Nov. 20, 2007.

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Freeman Boyd Daniels Hollander Goldberg & Ives P.A., Martha A. Mulvany, Albuquerque, NM, for Amicus Curiae New Mexico Criminal Defense Lawyers Association.

## OPINION

ROBINSON, Judge.

{1} A jury convicted Kimberly Rose Chavez (Defendant) of one count of abandonment or abuse of a child resulting in death, and possession of drug paraphernalia. Defendant raises several issues on appeal: (1) the district court erred in excluding a proposed exhibit of a report from the U.S. Consumer Products Safety Commission; (2) the evidence was insufficient to support a conviction for negligent child abuse resulting in death; (3) the jury instruction given for negligent child abuse resulting in death was incorrect and incomplete; and (4) she received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

{2} On December 9, 2003, Defendant said that her son (Child) had been sick with bronchitis, and she put him to bed at 10:00 p.m. She placed the swaddled infant on a low youth bed with no side rails, on his back with a bottle, and covered him with another blanket. Because the house had no central heat, she placed an electric space heater on the floor "catty-corner" to the bed. The heater was approximately nine inches from the youth bed at its closest point. Defendant said she fell asleep on the couch in the adjoining room. Defendant left her Child unattended all night, swaddled in blankets, on a bed with no rails. Child rolled off the bed and was burned to death by the space heater left beside the bed.

{3} The State presented evidence that on December 10, 2003, at 10:23 a.m., officers responded to a dispatch call at Defendant's home. Beside the smell of burnt flesh, the officers saw drug paraphernalia in plain view consisting of a brass pipe, a lighter, a nail clipper with burnt ends, a little plastic jar with a foil-wrapped pipe inside, and an ashtray. Defendant then consented to a search where the officers found a glass pipe with a burnt end on the kitchen shelf, a small jeweler's bag with white residue in the master bedroom, and a pipe bong. A forensic scientist testified that the two metal pipes tested positive for marijuana, and the residue in the glass pipe and in the small bag tested positive for methamphetamine. Defendant's blood was drawn that day at 3:40 p.m. and tested positive for methamphetamine. A certified technician from the Department of Health was unable to definitely say when Defendant ingested the methamphetamine, but agreed it was consistent with ingestion during the previous twenty-four hours.

{4} Defendant was convicted of one count of abandonment or abuse of a child resulting in death-a first-degree felony-contrary to NMSA 1978, § 30–6–1(D)(1) (2005), and possession. Defendant appeals.

## II. DISCUSSION

### A. The Trial Court Did Not Err in Excluding the Defense's Proposed Exhibit of a Report From the U.S. Consumer Products Safety Commission

{5} "Admission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *State v. Stampley*, 1999–NMSC–027, ¶ 37, 127 N.M. 426, 982 P.2d 477 (internal quotation marks and citation omitted).

 {6} Defense counsel sought permission to introduce at trial a six-page document

dated February 2001, generated by the U.S. Consumer Products Safety Commission, regarding the consumer use of space heaters and incidents of death from their use. The district court ruled the report irrelevant because Defendant did not read the report, nor was she familiar with the report. The court also found that the other deadly incidents discussed in the report were not relevant to this case. We agree.

{7} Even assuming, arguendo, that the district court erred, the purported error in this case was harmless. New Mexico follows the standard for harmless error set out by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See State v. Jett*, 111 N.M. 309, 312, 805 P.2d 78, 81 (1991). In *Chapman*, the Supreme Court defined the standard as "whether there is a reasonable possibility that the [error] might have contributed to the conviction." 386 U.S. at 23, 87 S.Ct. 824 (improper admission of evidence) (internal quotation marks and citation omitted). In *State v. Balderama*, our Supreme Court held that "[e]rror in the exclusion of evidence in a criminal trial is prejudicial and not harmless if there is a reasonable possibility that the excluded evidence might have affected the jury's verdict." 2004–NMSC–008, ¶ 41, 135 N.M. 329, 88 P.3d 845.

{8} We do not see how the report could have contributed to Defendant's argument in any way that would have altered the outcome of the trial. Assuming the report had been admitted into evidence, Defendant had never seen or relied upon the report prior to Child's death, and it did not directly relate to any fact at issue in this case. Therefore, we affirm the district court.

**B. The Conviction for Child Abuse Resulting in Death Was Supported by Sufficient Evidence**

{9} Defendant contends that there was insufficient evidence to convict her of criminal negligent child abuse or abandonment resulting in death. In evaluating a claim that the evidence is insufficient to support a conviction, the analysis is whether substantial evidence exists of either a direct or circumstantial nature to support a verdict

of guilty beyond a reasonable doubt with respect to each element of the crime charged. *State v. Apodaca*, 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994). "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Reyes*, 2002–NMSC–024, ¶ 43, 132 N.M. 576, 52 P.3d 948 (quoting *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)). We do not weigh the evidence or "substitute [our] judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

{10} The State presented evidence that on December 9, 2003, Defendant said that Child had been sick with bronchitis, and she put him to bed at 10:00 p.m. She placed Child on a low youth bed, on his back with a bottle, and covered him with blankets. The bed was positioned against the wall, and Defendant placed Child with his head pointing toward the wall so that, if he rolled, the railings at the head and foot of the bed might block him. Because the house had no central heat, she placed an electric space heater on the floor catty-corner to the bed. The heater was approximately nine inches from the youth bed at its closest point. Defendant said she fell asleep on the couch. Defendant left Child unattended all night, swaddled in blankets, on a bed with no rails. He rolled off the bed and was burned to death by the space heater left beside the bed. This evidence satisfies the elements of negligent child abuse resulting in death.

{11} In light of the evidence presented, it is not unreasonable for the jury to have determined that Defendant was guilty of one count of abandonment or abuse of a child resulting in death. Child was placed in a dangerous situation, which was created by Defendant because she placed Child in a sleeping arrangement that was highly and obviously dangerous to an infant and then completely failed to monitor him. Defendant testified that she knew Child could fall off the bed if left alone, and agreed it was important to check on him, especially since he was sick.

{12} Defendant argues that Child's death was not foreseeable. The jury's finding to the contrary is amply supported. Child was not even six months old and was swaddled in blankets. He could roll, but had no other substantial control over his bodily movements. Defendant was aware of this and placed Child in a way that, if he rolled, he would probably roll toward one end of the bed and not off the bed. However, the possibility that an unattended infant could manage to roll off a bed with no rails is far from unforeseeable. The foreseeability that Child would roll off the bed and be injured by the heater because of his near complete inability to move away from it is evident. The danger was not remote, improbable, or unexpected. The evidence sufficiently supported the conviction for negligent child abuse resulting in death.

{13} "The jury, as the trier of fact, was entitled to weigh this evidence." *State v. Hunter*, 101 N.M. 5, 7, 677 P.2d 618, 620 (1984). Therefore, we hold that a rational jury could have relied on this evidence to satisfy each element of the negligent child abuse resulting in death instruction and, as stated in *Hunter*, "[t]his Court will not substitute its determination for that of the jury." *Id.*

## C. The Jury Instructions Given Were the Approved Uniform Jury Instructions and Did Not Constitute Fundamental Error

{14} Defendant contends that the jury instructions improperly permitted the jury to convict her of the negligent child abuse charge based upon a civil negligence standard rather than a criminal negligence standard. We disagree.

{15} "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. Here, we must also decide whether a reasonable juror would have been confused or misled by the instruction. *State v. Benally*, 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "Fundamental error only applies in exceptional circumstances when

guilt is so doubtful that it would shock the judicial conscience to allow the conviction." *State v. Cunningham*, 2000–NMSC–009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

{16} Defendant's challenge is to the jury instructions pertaining to negligent child abuse resulting in death. It is undisputed that there was no objection to the instructions as given, and that any claimed error in the jury instructions was not preserved. Therefore, we review for fundamental error. *See* Rule 12–216(B)(2) NMRA; *State v. Sosa*, 1997–NMSC–032, ¶ 23, 123 N.M. 564, 943 P.2d 1017. The fundamental error doctrine is utilized under exceptional circumstances only and only to prevent a miscarriage of justice. *Jett*, 111 N.M. at 314, 805 P.2d at 83. A fundamental error "must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942).

{17} In accordance with Uniform Jury Instructions Nos. 14–602 and 14–603, the jury was instructed that, in order to find Defendant guilty of child abuse resulting in death, the State was required to prove beyond a reasonable doubt that (1) Defendant caused Child to be placed in a situation which endangered the life or health of Child; (2) Defendant acted with reckless disregard, and to find that Defendant acted with reckless disregard, the jury must find that Defendant knew, or should have known, her conduct created a substantial and foreseeable risk and Defendant disregarded that risk and was wholly indifferent to the consequences of her conduct and the welfare and safety of Child; (3) Defendant was the parent of Child; (4) Defendant's actions resulted in the death of Child; (5) Child was under the age of eighteen; and (6) this happened in New Mexico on or between December 9 and 10, 2003.

{18} The foregoing instructions incorporate a criminal negligence standard of conduct for child abuse cases that is consistent with the New Mexico Supreme Court opinion in *Santillanes v. State*, 115 N.M. 215, 849

P.2d 358 (1993). The statute under which Defendant was charged specifically provides that " 'negligently' refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." NMSA 1978 § 30–6–1(A)(3). This statute is explicitly based upon a criminal negligence standard. The statute was amended in 1997 to incorporate the criminal negligence standard discussed in *Santillanes*. *See* 1997 N.M. Laws ch. 163, § 1.

{19} It is well settled that the legislature has the authority to make negligent conduct a crime. *Santillanes,* 115 N.M. at 218, 849 P.2d at 361. In *Santillanes,* the Supreme Court held that only criminal negligence would suffice to ground felony liability in New Mexico. Thus, the Court interpreted the "negligence" term in the child abuse statute to require more than civil negligence. *Id.* at 222, 849 P.2d at 365. In New Mexico, criminal negligence encompasses objective or subjective knowledge of the risk, *i.e.,* knew or should have known, and requires "reckless disregard" of a "substantial and foreseeable risk." *See* UJI 14–602, –603. " 'Reckless disregard' requires that [the d]efendant's conduct created a substantial and foreseeable risk and that [the d]efendant disregarded such risk and was wholly indifferent to the consequences of his conduct and the welfare and safety of others." *State v. Mireles,* 2004–NMCA–100, ¶ 38, 136 N.M. 337, 98 P.3d 727 (citation omitted).

{20} In cases such as this, the jury must be informed that the State bears the burden of proving that the defendant was "criminal[ly] negligen[t]," signifying that "defendant knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." *Santillanes,* 115 N.M. at 222, 849 P.2d at 365. The jury must also be advised on the definition of " 'reckless disregard.' " *State v. Magby,* 1998–NMSC–042, ¶¶ 15, 20, 126 N.M. 361, 969 P.2d 965 (finding reversible error where negligent child abuse instruction did not define reckless disregard, and jury might have understood negligence standard to criminalize careless or extremely

careless conduct); *accord State v. Mascareñas,* 2000–NMSC–017, ¶ 21, 129 N.M. 230, 4 P.3d 1221 (finding fundamental error where the jury could have convicted the defendant by erroneously using a civil negligence standard); *see State v. Schoonmaker,* 2005–NMCA–012, 136 N.M. 749, 105 P.3d 302, *cert. granted,* 2005–NMCERT–001, 137 N.M. 17, 106 P.3d 579.

{21} In *Magby,* the jury was instructed on negligent child abuse in conformity with the standard enunciated in *Santillanes.* "To find that [the defendant] negligently caused child abuse to occur, you must find that [the defendant] knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of [the child]." *Magby,* 1998–NMSC–042, ¶ 5 (emphasis omitted). The Supreme Court reversed the defendant's conviction, holding that the terms "negligently" and "reckless disregard" in the instruction was "fatally ambiguous [because] there [was] 'no way to determine' whether the jury had a correct or incorrect understanding of the instruction." *Id.* ¶¶ 13, 14. The Supreme Court found that the instructions did not adequately instruct the jury on the mens rea of negligent child abuse. The Court specifically took the "opportunity to clarify the proper jury instructions to be given in proceedings where a defendant is charged with negligent child abuse." *Id.* ¶ 7. The Court found that the defendant's requested instruction defining the term "reckless disregard" should have been given. Without that instruction, the jury could have convicted the defendant on a civil, as opposed to a criminal, standard of negligence. *Id.* ¶¶ 15–16. Thus, "[a]n express definition of 'reckless disregard' would be particularly appropriate for these instructions because the distinction between criminal negligence and civil negligence turns on an understanding of the concept of recklessness. . . . We therefore direct the UJI Criminal Committee to formulate a definition of 'reckless disregard' similar to the one tendered by defense counsel in this case for use in negligent child abuse cases in the future." *Id.* ¶ 17 (internal citations omitted). The UJI Committee followed this mandate and modified UJI 14–602 and UJI 14–603 to incorporate the term "reckless disregard" as

defined in *Magby.* UJI 14–602, –603 Use Notes.

{22} Because the definitions for criminal negligence and reckless disregard were integrated into the instruction, the jury could not have convicted Defendant under a lesser civil standard. "To the contrary, adding the negligence language would only serve to reintroduce an ambiguity that the *Magby* court expressly wanted to avoid." *Schoonmaker,* 2005–NMCA–012, ¶ 16. We hold that the proffered jury instructions were acceptable.

{23} Defendant has not shown how the proffered instructions would put her conviction into doubt, so as to "shock the judicial conscience to allow the conviction." *Cunningham,* 2000–NMSC–009, ¶ 13 (internal quotation marks and citation omitted). As demonstrated in our discussion of the sufficiency of the evidence, there was sufficient evidence for the jury to find that the risk of harm to Child was so substantial and foreseeable that she should have known of the risk she created, but that she was wholly indifferent to it. *State v. McCrary,* 100 N.M. 671, 673–74, 675 P.2d 120, 122–23 (1984) (holding that where defendant's conduct creates a high degree of risk, subjective knowledge is inferred by circumstantial evidence tending to prove defendant should have realized the risk under the circumstances). The evidence the jury received showed the danger posed to Defendant's son by her actions considering the circumstances of Child's age, his development which was limited to rolling, the proximity of the heater, the number of hours he was left unattended, and his listlessness due to bronchitis. We conclude that there was no error, much less fundamental error, with regard to the proffered instructions.

**D. Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel for Defense Counsel's Failure to Sever the Drug Paraphernalia Charge and to Move to Exclude Other Evidence Regarding Defendant's Drug Use**

{24} To establish an ineffective assistance of counsel claim, a defendant must first show that counsel erred in his performance, and then show that the error resulted in prejudice. *Strickland v. Washington,* 466 U.S. 668, 690–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (reaffirmed by *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Counsel is generally presumed to have provided adequate assistance. *Id.* at 690, 104 S.Ct. 2052. An error only occurs if "'representation [falls] below an objective standard of reasonableness.'" *State v. Roybal,* 2002–NMSC–027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (quoting *Lytle v. Jordan,* 2001–NMSC–016, ¶ 26, 130 N.M. 198, 22 P.3d 666). A defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In particular, bad tactics and improvident strategy do not necessarily translate into ineffective assistance. The Sixth Amendment demands only reasonable competence, but a defendant is not guaranteed an errorless defense. *State v. Orona,* 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982). The ineffective assistance of counsel inquiry is highly deferential, cannot rely on hindsight, and must take into account all the circumstances surrounding the defense. *Lytle,* 2001–NMSC–016, ¶ 26.

{25} More often than not, the record on appeal does not supply sufficient information to properly determine whether an action by counsel was done in error, or caused prejudice to the defendant. When this occurs, further evidence is often called for. *Duncan v. Kerby,* 115 N.M. 344, 346–47, 851 P.2d 466, 468–69 (1993). "Rather than remand the case to the trial court for further hearings, this Court has a general preference that such claims be brought and resolved through habeas corpus proceedings." *State v. Bernal,* 2006–NMSC–050, ¶ 33, 140 N.M. 644, 146 P.3d 289.

{26} Defendant claims ineffective assistance because of defense counsel's failure to move for severance of the paraphernalia charge from the child abuse charge. Defendant also declares that defense counsel's failure to exclude highly prejudicial evidence about drug use constituted ineffective assistance of counsel because this evidence led the jury to infer that Defendant was a "bad person" who deserved to be punished for the

accidental death of her child. Defendant actually admitted at trial that some of the drug paraphernalia found in the house was hers.

{27} Here, the list of counsel's failures all go to matters of trial tactics and strategy. Even if we were to assume that the list of failures accumulated to the level that counsel's performance fell below that of a reasonably competent attorney, Defendant has not established prejudice. She argues that had these failures not occurred, there would probably have been a more favorable result. Defendant must show a reasonable probability that the result of the conviction would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Defendant has not shown that here.

{28} We conclude Defendant has not presented a prima facie case of ineffective assistance of counsel on these grounds. We, therefore, reject Defendant's ineffective assistance of counsel claim. However, this decision does not prevent Defendant from pursuing habeas corpus proceedings on this issue should she be able to acquire evidence to support her claims.

## III. CONCLUSION

{29} For the foregoing reasons, we affirm Defendant's conviction for negligent child abuse resulting in the death of Child, and possession of drug paraphernalia.

{30} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.