**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: October 7, 2013

Docket No. 31,429

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

SAMANTHA GARCIA,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}** Samantha Garcia (Defendant) appeals her conviction for negligent child abuse by endangerment pursuant to NMSA 1978, Section 30-6-1(D)(1) (2009). She raises three claims of error, arguing that she was denied a fair and impartial jury when the district court placed limitations on her questioning of prospective jurors during voir dire, that she was entitled to a lesser-included offense instruction on abandonment of a child, and that the district court erred in denying her motion for a directed verdict on the child abuse charge. We address only

1

the motion for directed verdict and conclude that the evidence was insufficient to support Defendant's conviction. We reverse.

**BACKGROUND**

**{2}**     Based on the following evidence, a jury convicted Defendant of one count of negligent child abuse by endangerment and one count of possession of drug paraphernalia. On May 15, 2010, Defendant's neighbor (Neighbor) found Defendant's three-year-old boy (Child) wandering around outside their apartment building at 2:00 a.m. Child was wearing only a dirty diaper. He was crying and cold. There was no way to tell where Child had wandered after he left his home, nor was it possible to tell how long Child had been wandering outside. The apartment building was located in a high-crime area, and there was a busy parking lot, alley, and street nearby.

**{3}**     Neighbor asked Child where he lived, and he pointed toward the apartment where he and Defendant lived. The door to Defendant's apartment was ajar when Neighbor returned Child home. Neighbor called inside the apartment, but no one responded. She entered the apartment, changed the child's diaper, put him to bed, and called the police. Defendant's apartment was filled with empty beer cans, vodka bottles, and other trash, and there was vomit on the floor. There was a marijuana pipe on the dining room table, along with a small burnt portion of a marijuana cigarette, and a knife in the bedroom.

**{4}**     After calling the police, Neighbor found Defendant asleep in another bedroom of the apartment. Neighbor attempted to rouse Defendant by nudging her repeatedly and telling her that her baby had been outside. Defendant responded, "It's ok," and did not get up. Neighbor believed that Defendant was intoxicated. When the police arrived, Defendant admitted that she had gotten high and drunk.

**{5}**     Defendant did not testify and called no witnesses on her behalf. After the close of the State's evidence, Defendant moved for a directed verdict on the charge of negligent abuse by endangerment. Defendant argued that *State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891, required the State to prove beyond a reasonable doubt that the risk to Child was foreseeable and that it was probable to cause serious harm to Child. Defendant argued that the State failed to meet this burden of proof because it produced no evidence to show that Child had been in a direct line of harm or otherwise exposed to anything more than a mere possibility, rather than a probability, of danger. Defendant further noted that nothing in the State's evidence indicated that Defendant's intoxication contributed to Child's episode of wandering outside the apartment. The district court denied Defendant's motion. Defendant timely raised her appeal with this Court.

**STANDARD OF REVIEW**

**{6}**     To review a district court's denial of a motion for directed verdict, we must determine whether sufficient evidence was adduced to support the underlying charge. *State*

*v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198.

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* (emphasis, alteration, internal quotation marks, and citations omitted).

**DISCUSSION**

**{7}**     The district court determined that the State had presented a prima facie case of child abuse by endangerment and submitted this theory to the jury, denying Defendant's motion for directed verdict. Child abuse by endangerment, a third degree felony, occurs when an adult knowingly, intentionally, or negligently places a child "in a situation that may endanger the child's life or health." Section 30-6-1(D)-(E). Defendant argues on appeal that the evidence was insufficient to support her conviction because the State failed to prove that the risk to Child was foreseeable and probable.

**{8}**     In this case, the State argued that Defendant's intoxication was criminally negligent because it left Child without adequate supervision. *See State v. Schoonmaker*, 2008-NMSC-010, ¶ 44, 143 N.M. 373, 176 P.3d 1105 (explaining that the child endangerment statute "evinces a legislative intent to use the concept of criminal negligence . . . as the standard for negligent child abuse"). A defendant is criminally negligent, if she "knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3). Thus, the State had the burden to prove beyond a reasonable doubt that Defendant's intoxication caused Child to be placed in a situation that endangered Child's health or safety, that Defendant knew or should have known of the danger that would result from her intoxication, and that Defendant nonetheless chose to disregard the risk and acted with reckless disregard for the safety or health of her child. *Id.*; *see Chavez*, 2009-NMSC-035, ¶ 22 (requiring the prosecution, in order to support a conviction pursuant to Section 30-6-1(D)(1), to prevent evidence which establishes that a defendant's conduct "created a substantial and foreseeable risk of harm" (emphasis, internal quotation marks, and citation omitted)). The State contends that it met this burden by simply presenting evidence that Defendant was intoxicated on the night in question and that Child was found in the middle of the night wandering outside the apartment building on his own. The State argues that this evidence was sufficient to demonstrate that Defendant was too intoxicated to adequately supervise Child after "Defendant's actions . . . placed [Child]

3

directly in a zone of danger."

**{9}** On three occasions, this Court has upheld a parent's conviction for negligent child abuse based on evidence of inadequate child supervision involving intoxication or substance abuse. *State v. Schaaf*, 2013-NMCA-082, ¶ 18, 308 P.3d 160 (holding that the defendant's admission to the danger presented by a combination of serious risks apparent in the children's living environment along with the defendant's "compromised state" arising from ongoing methamphetamine use provided sufficient evidence to prove "an ongoing and pervasive zone of imminent danger" such that it constituted criminal child endangerment); *State v. Chavez*, 2007-NMCA-162, ¶¶ 3, 11, 143 N.M. 126, 173 P.3d 48 (holding that there was sufficient evidence to find the defendant guilty of child abuse where evidence indicated that she was high on methamphetamine, "placed [her c]hild in a sleeping arrangement that was highly and obviously dangerous to an infant and then completely failed to monitor [her child]"); *State v. Watchman*, 2005-NMCA-125, ¶ 5, 138 N.M. 488, 122 P.3d 855 (holding that there was sufficient evidence to find the defendant guilty of child abuse when she drove drunk to a bar with her child and then left the child in a dangerous parking lot alone). In all of these cases, the defendants failed to provide supervision of their children after placing them in dangerous situations where parental supervision was necessary. *See Schaaf*, 2013-NMCA-082, ¶ 17 ("[T]he evidence supports a rational inference that [the defendant's] judgment was highly impaired in the presence of substantial risks of harm to the children and that [the d]efendant had not secured and would not secure the substantial risks from the children."); *Chavez*, 2007-NMCA-162, ¶ 11 ("[The d]efendant testified that she knew [her c]hild could fall off the bed if left alone, and agreed it was important to check on him, especially since he was sick."); *Watchman*, 2005-NMCA-125, ¶ 5 ("The child was placed in a dangerous situation, which was created by [the d]efendant because the child was in the cab of an unlocked truck, at approximately 1:30 a.m., in a high traffic area ([the bar's] parking lot, with approximately 200-240 people in the bar that night) unprotected and vulnerable to any passerby.").

**{10}** We conclude that these cases are distinguishable because, in all three cases, there was specific evidence of antecedent conduct by the parent that placed the child in a dangerous situation and in the direct line of danger. *See State v. Gonzales*, 2011-NMCA-081, ¶ 20, 150 N.M. 494, 263 P.3d 271 ("[E]ndangerment is something that exists as an antecedent to any harm that might befall a child."), *aff'd on other grounds*, 2013-NMSC-016, 301 P.3d 380. In the present case, we see no evidence in the record which indicates that Defendant's act of falling asleep in her apartment bedroom intoxicated, or any subsequent failure to act, created a substantial and foreseeable risk of harm directed to Child. *Id.* ¶ 18 ("[B]y classifying child endangerment as a third-degree felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." (internal quotation marks and citation omitted)). "The risk cannot be merely hypothetical, as the child must be physically close to an inherently dangerous situation *of the defendant's creation.*" *Id.* ¶ 21 (emphasis added)). The foreseeability of danger must be "directed toward the child[]." *Id.* ¶ 20.

4

**{11}** The evidence presented by the State during trial was only sufficient to establish that Defendant was intoxicated when she fell asleep in her bedroom on the night in question. Factually, this particular event of falling asleep did not create a foreseeable risk of danger directed toward Child. We note that Defendant's behavior was not admirable. But the record only establishes that Child wandered outside while Defendant was asleep at 2:00 a.m. It would be speculation to consider whether Child attempted to rouse Defendant before leaving the apartment, whether Child opened the door to the apartment himself, or whether any other action or inaction could be attributed to Defendant as creating a substantial and foreseeable risk of harm to Child on the night in question. *See Schaaf*, 2013-NMCA-082, ¶ 12 ("Another important factor is [the d]efendant's recognition and admission regarding the serious nature of the real risks of harm present in the house and the potential injury or death that the children were exposed to there."); *State v. Hughey*, 2007-NMSC-036, ¶ 13, 142 N.M. 83, 163 P.3d 470 (noting that without evidentiary support, the jury would be improperly left to speculate about the issue presented). "[N]egligent child abuse is no accident" and any such reference is "a clear misstatement of the law." *Gonzales*, 2011-NMCA-081, ¶ 26 (internal quotation marks and citation omitted). A jury must draw its reasonable conclusions from the evidence produced at trial, it must not be left to speculate in the absence of such proof. *State v. Trossman*, 2009-NMSC-034, ¶ 24, 146 N.M. 462, 212 P.3d 350. Simply falling asleep intoxicated in a separate bedroom is not enough to establish child endangerment.

**{12}** The State failed to connect Child's ability to wander out of the apartment with Defendant's intoxication or otherwise prove that Defendant acted or failed to act with any resulting foreseeable risk that endangered Child's life or health. *See Gonzales*, 2011-NMCA-081, ¶ 20 ("[P]lacing a child in a dangerous situation and in the direct line of danger, however briefly, must precede the injury that is likely to result from that danger."). We recognize that Defendant's intoxication may have caused some potential or speculative risk to Child, despite being in the security of their residence for the night. As it turned out, Child wandered outside in the middle of the night, an unsafe and potentially dangerous situation. However, this Court does not measure endangerment by the resulting injury, it is measured by the antecedent foreseeability of the actual risk of substantial harm to the child. *State v. Webb*, 2013-NMCA- 027, ¶ 22, 269 P.3d 1247 ("No one could have foreseen that [the child] would have or develop an allergy to penicillin, which would complicate her treatment. [The d]efendant cannot be convicted for child abuse for failing to perceive a risk . . . of which nobody was aware."), *cert. denied*, 2013-NMCERT-002, 300 P.3d 132; *Gonzales*, 2011-NMCA-081, ¶ 20 ("Since it is the endangerment and not the resulting injury that constitutes the offense, there must be an actual or imputed foreseeability of danger directed toward the children who might be injured as a result of [the d]efendant's acts."). The record is completely devoid of evidence indicating that Defendant's voluntary intoxication created the situation in which her unsupervised child would foreseeably leave the apartment at 2:00 a.m. and be vulnerable to a substantial risk of injury. *Webb*, 2013-NMCA-027, ¶ 23 ("The [prosecution] did not present sufficient evidence from which a jury could find that [the d]efendant's conduct created a substantial and foreseeable risk of serious harm to [the child]."); *Chavez*, 2009-NMSC-035, ¶ 37 ("The problem . . . is the lack of any specific evidence connecting these conditions to a substantial and foreseeable risk of harm.").

**{13}** We realize that the evidence established that Defendant was engaged in the use of alcohol and illegal drugs. Defendant was negligent when she became intoxicated. It is both imprudent and generally negligent to use drugs and alcohol while being responsible for a child. But we refuse to hold that a defendant who gets intoxicated and falls asleep in the same apartment as her child, with nothing more, is criminally negligent. *See Webb*, 2013-NMCA- 027, ¶ 22 ("The risk must be of such a nature and degree that the actor's failure to perceive it, . . . involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." (internal quotation marks and citation omitted)); *State v. Massengill*, 2003-NMCA-024, ¶ 45, 133 N.M. 263, 62 P.3d 354 ("Our Supreme Court has determined that the child abuse statute contains no indication that the [L]egislature intended felony punishment to attach to ordinary negligent conduct." (internal quotation marks and citation omitted)). We, as a society, cannot punish parents under a theory of strict liability for every imaginable error in judgment, even if a child is injured. "[I]f imprudent and possibly negligent conduct were sufficient to expose a care giver to criminal liability for child endangerment, undoubtedly the majority of parents in this country would be guilty of child endangering—at least for acts of similar culpability." *Id.* ¶ 46.

**{14}** In this case, the limited evidence merely showed that Defendant did not wake up when Child awoke and wandered out of their apartment late at night. There was no evidence that Defendant "acted with reckless disregard, . . . created a substantial and foreseeable risk, . . . [and] was wholly indifferent . . . to the welfare and safety of [Child]." The State failed to establish \any connection between Defendant's intoxication and Child's act of wandering out of the apartment on the night in question. We do not condone Defendant's behavior, but based on the undeveloped factual circumstances in this specific case, we cannot hold Defendant criminally negligent. Our review of the record leads us to conclude that Defendant's conviction for child abuse by endangerment is not supported by substantial evidence and must be reversed.

## CONCLUSION

**{15}** For the foregoing reasons, we reverse Defendant's conviction for child abuse by endangerment and remand to the district court for proceedings consistent with this Opinion. We need not address Defendant's remaining contentions of error.

**{16}   IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**JONATHAN B. SUTIN, Judge, (specially concurring)**

**MICHAEL E. VIGIL, Judge, (dissenting)**

**SUTIN, Judge (specially concurring).**

{17}   Although the facts of this case are disturbing, to conclude that there was sufficient evidence for jury consideration on the abuse charge expands the scope of Section 30-6-1(D)(1) beyond what can reasonably have been the Legislature's intent or any permissible reach of the statute. To interpret Section 30-6-1(D)(1) as permitting the State under the circumstances of this case to charge an intoxicated parent who falls asleep and whose three-year-old child ends up outside at 2:00 a.m., leaves thousands of parents at risk of felony prosecution based on little, if anything, more than evidence of intoxication, sleep, and an apparently unsecured door—evidence that, viewed objectively, without more, should not constitute the level of behavior contemplated by the Legislature in criminalizing, by felony, negligent child abuse by endangerment.

{18}   "[C]riminal negligence for purposes of child endangerment is measured objectively[.]" *Chavez*, 2009-NMSC-035, ¶ 45. It occurs "when a person *should* be aware of a substantial and unjustifiable risk that harm will result from his conduct." *Id.* (alteration, internal quotation marks, and citation omitted). And it requires the risk to be "of such a nature and degree that the [defendant's] failure to perceive it, considering the nature . . . of [the defendant's] conduct and the circumstances known to [the defendant], involves a gross deviation from the standard of care." *Id.* (internal quotation marks and citation omitted). By classifying it as a third degree felony, our Legislature anticipated that criminal prosecution of child abuse by endangerment would be reserved for application to the most dangerous circumstances and not to "theoretical dangers." *Id.* ¶ 16.

{19}   Two sources of possible risk of harm to Child existed in this case: (1) the condition of the apartment, in which vodka bottles, beer cans, an open pocket knife, a partially burned marijuana cigarette, and a home-made marijuana pipe were found; and (2) Defendant becoming intoxicated by drinking alcohol and smoking marijuana, then falling asleep, and the fact that the three-year-old Child left the apartment of his own accord. Neither provided sufficient evidence for conviction in this case.

**The Apartment**

{20}   In my view, the evidence regarding the condition of the apartment was not sufficient in any respect to support the charge. Although Officer Mullins testified that he found a small, burnt portion of a marijuana cigarette in the apartment, he did not specify where it was. He testified that the alcohol-related bottles and cans that were within Child's reach were empty, and he was concerned not that Child would drink from them, but that Child could cut himself on the cans. The State presented no evidence that any liquid remained in any bottle or can within Child's reach. The opened folding pocket knife was on the dresser in Defendant's bedroom; and although Officer Mullins, based on a "visual reference" that involved estimating Child's height as compared with the height of the dresser, believed that Child was tall enough to reach the knife, Child would have had to reach over his head to get it. The marijuana pipe was in the middle of the dining room table; and the pipe appeared to have

7

been recently used, but there was no evidence that there was marijuana in the pipe when Officer Mullins found it.

**{21}** In criminalizing child abuse, the Legislature intended the statute to encompass "conduct that creates a truly significant risk of serious harm to children." *Id.* ¶ 22. The evidence relating to the bottles, cans, and knife was sufficient to establish a risk of harm that might well have alerted the Children, Youth and Families Department to initiate civil abuse and neglect proceedings, but, viewed objectively, the evidence was not sufficient to establish a risk of harm giving rise to a felony charge of criminal child endangerment. *See id.* ¶¶ 12-16 (recognizing that within the framework of civil and criminal laws aimed at ameliorating child abuse and neglect, the prosecution has "a broad array of civil remedies" and that criminal sanctions for child abuse fall on "the far end of [the] spectrum" and are "reserved for the most serious occurrences").

**{22}** Marijuana, of course, can pose a known risk of harm.[1] *See State v. Graham*, 2005-NMSC-004, ¶¶ 10, 14, 137 N.M. 197, 109 P.3d 285 (upholding a child abuse conviction where children were in a house in which marijuana was found on the floor, and in an infant's crib, and was easily accessible to the children). But in this case there was no evidence that the burnt marijuana cigarette was within Child's reach. Nor was there evidence that the amount of marijuana that remained in the small, burnt portion of the cigarette, or that the home-made marijuana pipe, presented a risk of "serious harm" to Child. Under these circumstances, the marijuana-related evidence does not support a negligent endangerment conviction. *See Chavez*, 2009-NMSC-035, ¶¶ 37-40 (requiring the prosecution to establish a connection between the hazards present in the home and a serious risk of harm to the children).

**{23}** In sum, the evidence of the condition of Defendant's apartment, whether parsing the evidence or considering the totality of the circumstances, was insufficient to prove a "serious risk" as that term was used by our Legislature in drafting Section 30-6-1(D)(1) and as it has been interpreted by our Supreme Court as evincing legislative purpose "to punish conduct that creates a truly significant risk of serious harm to children." *Chavez*, 2009-NMSC-035, ¶ 22. Further, the condition cannot be piggy-backed onto a felony abuse charge based on Defendant's conditions of intoxication, sleep, and failure to secure the door.

**Defendant's Intoxication and Sleep and Child Outside**

**{24}** Paramount to the State's argument regarding the sufficiency of the evidence is the risk of harm that was created by a combination of Defendant's intoxication and the fact that Child left the apartment. The evidence at trial left no room for doubt that Defendant was intoxicated, sound asleep and, apparently, oblivious to the fact that Child had left the

---

[1] As can many prescribed medications, including "medical marijuana," if carelessly left within a child's reach.

8

apartment.

**{25}** Yet, viewing the evidence objectively, as we must, and in terms of legislative intent, the critical question is whether the evidence at trial of the foreseeability factor was sufficient for a jury to convict for felony child abuse under Section 30-6-1(D). *See Chavez*, 2009-NMSC-035, ¶ 47 ("However, in addition to the gravity of the potential [harm], we must also consider whether it was foreseeable that an injury would actually occur."). In other words, was the possibility of Child leaving the apartment of his own accord an "obvious risk" such that a reasonable person would have, and Defendant should have, perceived it? *See id.* ¶¶ 45, 52 (discussing the notion of foreseeability in the context of negligent child endangerment). The State failed to present any evidence to support a jury determination that Defendant should have known that Child would leave the apartment by himself and wander outside.

**{26}** Nothing was presented to show whether the door was left open or opened by Child, to show whether the door was locked by a particular locking mechanism and Child had learned from observation how to work the lock, or to show that Child had a propensity to wake up at night and wander around, much less outside. No evidence was presented regarding Child's night-time habits, including whether he ever left his bed after midnight, or whether he tended to wake Defendant up or get her attention after she went to bed. Nor did the State present evidence regarding the extent, if any, to which Child knew how to operate the door, or whether he had ever, before the night of this incident, attempted to leave or had ever left Defendant's apartment by himself. *See id.* ¶¶ 52-53 (reversing a child abuse by endangerment conviction where the conviction was "supported primarily by speculation and surmise"). Nor was there evidence whether Defendant had secured the door (as she may always have done), and her boyfriend had opened the door and failed to secure it afterward. In sum, what we have in this case is the State's failure to present sufficient evidence to prove that Defendant should have been concerned about a risk of Child going outside that night. In other words, the State did not establish that the risk of Child leaving the apartment in the middle of the night to wander around outside was an obvious one that a reasonable person would have perceived and of which Defendant should have been aware. *See id.* ¶¶ 45, 47, 52. The jury was thus left to speculate as to the foreseeability of the risk.

**{27}** Thus, in the absence of evidence other than intoxication, sleep, and the fact that Child was outside, the State did not establish foreseeability. Defendant's intoxication and sleep status did not, objectively speaking, create more than a mere possibility that Child might wander outside around 2:00 a.m. by himself. The State cannot defend its failure of evidence by arguing that the factors of foreseeability can come only from Defendant testifying. We are left in the dark whether witnesses existed who could testify regarding factors such as those we have identified relating to foreseeability, including, possibly, the boyfriend who was at Defendant's apartment overnight, or relatives, friends, and neighbors, who may have been familiar with Child's propensities and capabilities and with Defendant's knowledge.

**{28}** The facts of this case unquestionably induce a visceral or emotional reaction that stems from the circumstance of a three-year-old child being found outside at 2:00 a.m., in

9

the cold and alone, while his mother lay inside her apartment, intoxicated and asleep. One's immediate reaction is to conclude that any parent who voluntarily drinks too much and to a point of falling into a heavy sleep and who, presumably, fails to first assure that the apartment's doors are secure deserves to be charged and convicted for felony child abuse and to risk imprisonment. Viewed objectively, however, the facts established nothing more than that Defendant became intoxicated in her own home and fell asleep, and Child was found outside. That Defendant responded with what appeared to be an "I-could-not-care-less" attitude to the neighbor's arousing her to an awakened state says nothing about foreseeability, especially given that Defendant was awakened from what was apparently a deep sleep and intoxicated condition. The fact of the matter stands: no evidence was presented to support the jury's finding, beyond a reasonable doubt, that Defendant could or should have foreseen that Child would leave the apartment in the middle of the night of his own accord and wander outside.

{29}     Even were one to assume that Defendant fell asleep without first locking the door in a failsafe manner to prevent Child from leaving, to uphold Defendant's conviction in this case is to set a very worrisome, if not dangerous precedent—one paramount to saying that any parent of a child who becomes intoxicated in his or her own home, or even one who takes sleep-inducing drugs such as sleeping pills, muscle relaxants, or cold medication and then falls into a heavy or deep sleep forgetting to first secure all doors leading outside, is chargeable for a third degree felony should his or her child go outside with exposure to possible harm. This cannot have been the intent of the Legislature in drafting Section 30-6-1(D). *See Chavez*, 2009-NMSC-035, ¶ 10 ("A criminal statute may not be applied beyond its intended scope, and it is a fundamental rule of constitutional law that crimes must be defined with appropriate definiteness." (internal quotation marks and citation omitted)); *id.* ¶ 16 (explaining that "our endangerment statute [taken literally] could be read broadly to permit prosecution for any conduct, however remote the risk, that may endanger a child's life or health"; thus, courts must take "a more restrictive view of the endangerment statute" and apply it only to the most serious occurrences of child endangerment (alteration and internal quotation marks omitted)).

{30}     To summarize, the bare facts of this case—intoxication to some unknown degree resulting in some degree of heavy sleep and Child having left the apartment—are little different from, and could well constitute, the unastonishing circumstances that regularly exist for thousands of parents throughout New Mexico who drink alcoholic beverages, take prescribed or over-the-counter sleep-inducing drugs, and fall asleep, even including parents who forget to assure that the front door is secure. Without greater objective proof establishing foreseeability, upholding Defendant's conviction leaves far too wide a prosecutorial universe than what I believe the Legislature could reasonably have intended. As the facts stand in this case, Defendant's conduct should have been handled, if at all, pursuant to the Legislature's civil abuse and neglect laws.

_____
**JONATHAN B. SUTIN, Judge**

10

**VIGIL, Judge (dissenting).**

{31}   My colleagues conclude in separate opinions that the evidence in this case is insufficient to satisfy the elements of negligent child abuse by endangerment. Close scrutiny of those opinions demonstrates that what my colleagues have done is weigh the evidence, contrary to our standard of review. I respectfully submit that viewing the evidence as we are called to on appeal, the evidence is sufficient. Therefore, I dissent.

{32}   Because my colleagues conclude that the evidence is not sufficient to support the conviction for negligent child abuse, they do not address Defendant's argument that Defendant was entitled to have the jury consider abandonment of a child as a lesser-included offense. On this point, I agree with Defendant. Since the district court denied Defendant's request for the lesser-included instruction, I would reverse and remand for a new trial.

**SUFFICIENCY OF THE EVIDENCE**

{33}   At trial, a neighbor testified that while she was getting ready for work at approximately 2:00 a.m., she heard Child crying outside. It had just finished raining, and it was cold. She went outside and found the three-year-old Child wandering around the parking lot wearing only a dirty diaper, and crying for his mother. A police officer who later arrived at the scene testified that the apartment and parking lot was in a high-crime area, that there was lots of traffic in the parking lot and adjoining streets, and that there was a reasonable probability that Child could have walked into traffic.

{34}   The neighbor asked Child where he lived and he pointed to the open door of an apartment in the complex. She called inside the apartment three or four times, but no one answered. She then went into the apartment, changed Child's diaper, put him to bed, and gave him something to drink, before calling the police.

{35}   Going into the other bedroom of the apartment, the neighbor found Defendant sleeping on a bed. She repeatedly tried to awaken Defendant by nudging her and telling her that her baby had been outside. Defendant's response was to open her eyes, close them, and say, "It's ok." She did not seem at all concerned and did not get up. Thinking that perhaps Defendant did not understand English, the neighbor asked a friend to speak to her in Spanish, and Defendant still did not respond, other than to look at them dazed and unresponsive. Defendant appeared to be very intoxicated.

{36}   When the police officer arrived at the apartment, Child looked terrified—he was shaken and disturbed. The apartment was filled with empty beer cans, vodka bottles, and other trash, and there was vomit on the floor in the dining area. There was also a small burnt portion of a marijuana cigarette and a marijuana pipe made from tin foil on the dining room table, which were within reach of Child. There was evidence that someone placed clothing around a smoke detector, as if to prevent it from alerting to the presence of smoke. There was also an open pocket knife on a table in Defendant's bedroom, which was also in reach

11

of Child.

**{37}** The officer saw Defendant sitting up in bed "zoned out." Clothes, trash, and vomit were also on the floor in the bedroom. Besides Defendant, there was also a man in the bedroom, lying on the floor between the bed and wall, face down in a dirty diaper. The man (who was not Child's father) was taken outside, and Defendant was taken to the living room. After receiving her *Miranda* rights, Defendant was asked if she knew what was going on, and she responded that she had gotten drunk, was drunk, and had smoked marijuana from the marijuana pipe.

**{38}** Defendant asserts that her motion for a directed verdict should have been granted notwithstanding the foregoing evidence. In reviewing the denial of a motion for a directed verdict, our task is to determine whether the underlying charge was proven by sufficient evidence. *Sena*, 2008-NMSC-053, ¶ 10. Recently, our Supreme Court reiterated:

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. The reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. The question before us as a reviewing court is not whether we would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise.

*State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (alterations, internal quotation marks and citations omitted).

**{39}** Precedent already exists in which a parent was convicted of negligent child abuse by endangerment based on evidence that the parent became intoxicated and left the child unsupervised. In *Watchman*, 2005-NMCA-125, ¶ 4, a mother was convicted of negligent child abuse by endangerment when she left her twenty-one-month-old child alone and asleep on the seat of her unlocked truck. *Id.* ¶¶ 4-5. The truck was parked in the parking lot of a bar where there were frequent fights, vandalism, and loitering. *Id.* ¶ 4. It was 1:30 a.m. when the police found the child, and the mother was intoxicated. *Id.* Although no actual harm came to the child, we concluded that there was sufficient evidence to support a finding that the child was negligently endangered. This evidence included the fact that the child was left alone in an unlocked vehicle, "unprotected and vulnerable to any passerby." *Id.* ¶ 5. It was also "reasonably foreseeable that the child could have climbed out of the truck and wandered about the busy parking lot endangering himself by encountering an unsuspecting driver or rowdy patrons." *Id.* There was also evidence to support a finding that the mother had been intoxicated when she drove her child to the bar's parking lot. *Id.* Finally, we stated that the fact that there were open containers of alcohol further supported the conviction, because there was "a substantial and foreseeable risk of the consumption of such easily accessible

toxic spirits." *Id.* ¶¶ 4, 8.

**{40}** Although it is difficult to assess the likelihood that a child might get out of a car and be harmed by drivers or rowdy patrons, our conclusion that injury to the child was foreseeable due to a lack of supervision is significant here. It is also significant that there was evidence to support a conclusion that the failure to supervise resulted, at least in part, from voluntary intoxication. The rule I take from *Watchman* is that when a jury finds that circumstances are present which require parental supervision to prevent danger to a child's life or health, and a parent unjustifiably chooses to incapacitate herself from providing that supervision by intoxication, the jury may properly find that the parent has negligently endangered the child and therefore committed negligent child abuse. Admittedly, intoxication alone is not sufficient, but I submit that voluntary intoxication rendering one unable to provide supervision that is otherwise required under the circumstances is sufficient.

**{41}** Negligent abuse of a child that does not result in death or great bodily harm in violation of Section 30-6-1(D)(1) consists of "negligently, and without justifiable cause, causing or permitting a child to be placed in a situation that may endanger the child's life or health." The crime requires criminal negligence, which "means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3). Consistent with the statutory elements, the jury was instructed that in order to find Defendant guilty, it was required to find each of the following elements to have been proven beyond a reasonable doubt:

> 1. [Defendant] permitted [Child] to be placed in a situation which endangered the life or health of [Child];
>
> 2. [D]efendant acted with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known [D]efendant's conduct created a substantial and foreseeable risk, [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child].

Applying *Watchman*, I conclude, under our standard of review, that each of these elements was proven.

**{42}** There was sufficient evidence to support a finding by the jury that Defendant placed her three-year-old child in danger when she became so intoxicated that she rendered herself unconscious or semi-conscious such that she was unable to properly supervise him. There was evidence that Defendant was so intoxicated that it was difficult to rouse her, and that once roused, she seemed to lack comprehension or concern about what was going on around her. In fact, when Defendant's neighbor first tried to wake her and told her that Child had been wandering around outside, Defendant said, "It's ok" and did not get up. This evidence

13

supported a conclusion that had she noticed that her child was missing, or had Child been harmed and cried out, she would not have been able to react appropriately. There was evidence that there were dangers in the house, such as a knife on a low table that was within Child's reach, and a small, burnt portion of a marijuana cigarette on the dining room table. A knife is clearly a foreseeable danger to a child, and our Supreme Court has specifically stated that marijuana also constitutes a foreseeable danger to a child. *Graham*, 2005-NMSC-004, ¶ 12; *see also Watchman*, 2005-NMCA-125, ¶ 8 (concluding that it was foreseeable that a child would be harmed by ingesting intoxicants that were in the child's reach). There was also evidence that someone had placed clothing around a smoke detector, as if to prevent it from alerting to the presence of smoke. This intentional act endangered the child since if there had been a fire, the detector might not have sounded an alarm in order to alert Garcia, her companion, or the neighbors.

**{43}** A door does not open itself, and the front door of the apartment was open. This supports a finding that either the intoxicated adults left the door open, allowing Child to get outside, or Child was able to open the door and get outside on his own. Either of these findings permitted the jury to conclude that it was foreseeable that Child could get outside. Once outside, there were innumerable dangers to a three-year-old child wandering alone at 2:00 a.m. in a parking lot with lots of traffic in the parking lot and adjoining streets, wearing only a soiled diaper in cold weather. There was also evidence that the neighborhood was a dangerous one in which crimes were often committed. As in *Watchman*, once the child was outside alone, he was "unprotected and vulnerable to any passerby." 2005-NMCA-125, ¶ 5.

**{44}** Child was not actually harmed. However, as our Supreme Court has explained, "[b]y including endangerment in Section 30-6-1, the Legislature expressed its intent to extend the crime of child abuse to certain conduct even if the child has not suffered physical harm." *Graham*, 2005-NMSC-004, ¶ 9. *See Chavez*, 2009-NMSC-035, ¶ 15 ("[C]hild abuse by endangerment occurs when an adult knowingly, intentionally, or negligently places a child 'in a situation that may endanger the child's life or health.'" (citation omitted)). The fact that Child was not harmed does not diminish the dangers Child was exposed to because of Defendant's negligence in this case. The evidence in my view supports the jury's finding that Defendant committed negligent child abuse by endangerment. Since the majority disagrees, I dissent.

**Denial of an Instruction on Abandonment**

**{45}** Defendant contends reversible error resulted when the district court denied her request that the jury be instructed on abandonment of a child as a lesser-included offense to negligent child abuse by endangerment. I agree and would reverse and remand for a new trial on this basis.

**{46}** The State first argues that Defendant did not adequately preserve this issue for review on appeal because she did not tender a written instruction on abandonment in the district

court. While Rule 5-608(D) NMRA provides that in order to preserve an error for "failure to instruct on any issue, a correct written instruction must be tendered," our Supreme Court has stated that this rule is "subject to flexible enforcement that is consistent with its underlying rationale." *State v. Skippings*, 2011-NMSC-021, ¶ 25, 150 N.M. 216, 258 P.3d 1008. The purpose of the rule requiring a defendant to tender a correct written instruction is to "alert the trial court to the defendant's argument." *Id.* (internal quotation marks and citation omitted).

**{47}** Here, although Defendant did not tender a written instruction, she recited to the district court the statutory elements of abandonment. Specifically, Defendant informed the district court that Section 30-6-1(B) provides that abandonment of a child consists of a parent "intentionally leaving or abandoning the child under circumstances whereby the child may or does suffer neglect." Defendant further explained why she believed the facts of the case entitled her to an instruction on "leaving" but not "abandoning" Child. The district court was therefore clear about the elements of abandonment on which Defendant wanted the jury instructed. Further, after the district court ruled that an instruction on abandonment was not going to be given, Defendant submitted a list of additional instructions she asserted would have been appropriate to give if her request for the lesser-included instruction on abandonment had been granted. Under all the foregoing circumstances, the purpose of the rule was met and Defendant adequately preserved her argument for appellate review. *Compare State v. Badoni*, 2003-NMCA-009, ¶ 7, 133 N.M. 257, 62 P.3d 348 (holding that a defendant had failed to preserve an argument that a jury instruction should have been given where the defendant "neither tendered a written instruction nor orally dictated one" and the record did not show that the defendant "informed the trial judge of the specific language he wanted in a modified instruction").

**{48}** On the merits, the denial of a jury instruction presents a mixed question of law and fact, which we review de novo. *State v. Gaitan*, 2002-NMSC-007, ¶ 10, 131 N.M. 758, 42 P.3d 1207. A defendant is entitled to a lesser-included instruction, under the cognate approach adopted by our Supreme Court in *State v. Meadors*, 1995-NMSC-073, 121 N.M. 38, 908 P.2d 731, when the following conditions are satisfied:

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* ¶ 12. *See State v. Juan*, 2010-NMSC-041, ¶ 23, 148 N.M. 747, 242 P.3d 314 (stating the tests that are applicable when a defendant makes the request for a lesser-included instruction). Thus, we examine not only the offense charged, but also the evidence at trial to determine if an instruction was properly denied. *Id*. In this regard, we are required to view

the evidence in the light most favorable to the giving of the requested instruction. *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355.

{49}  In pertinent part, "abandonment of a child" consists of a parent "intentionally leaving" a child "under circumstances whereby the child may or does suffer neglect." Section 30-6-1(B). Paraphrasing, "neglect" in turn means that because of the parent's "neglect or refusal" a child is without parental "care or control necessary for the child's well-being." Section 30-6-1(A)(2). The connotation of the word "leaving" is one of separation. Thus, "leave" is defined in part to mean, "to take leave of or withdraw oneself from whether temporarily or permanently: go away or depart from." *Webster's Third New Int'l Dictionary* 1287 (unabridged ed. 2002). The word "leaving" is not limited to a physical, emotional, psychological, or mental component, nor has our Legislature indicated that the word should be so limited, when the care and well-being of a child is concerned. In fact, the Legislature seems to have expressed its intent that all forms of "leaving" a child by a parent are prohibited when the result is that the child is without parental care or control necessary for the child's well-being. When death or great bodily harm does not result from the abandonment, a parent commits a misdemeanor. Section 30-6-1(B).

{50}  The evidence at trial was that Defendant knowingly consumed marijuana and consumed alcohol to such a degree as to incapacitate herself from being able to provide for the proper care and control of Child and thereby endangered Child's life or health. I have already discussed why this evidence supports a conviction for negligent child abuse by endangerment. The evidence also supports a conviction for abandonment: her intoxication caused her to "leave" her child, rendering her unable to provide for the proper care and control necessary for the well-being of her three-year-old child. Thus, under the evidence in this case, Defendant could not commit the third degree felony of negligent child abuse by endangerment without also committing the misdemeanor of abandonment of a child by leaving Child. The dispute for the jury to determine was whether Defendant's conduct resulted in the failure to provide for the well-being of Child or resulted in endangering Child's life or health. Under the cognate approach of *Meadors* reversible error resulted when the district court refused Defendant's request that the jury be instructed on the lesser-included offense of abandonment of a child.

**CONCLUSION**

{51}  For the foregoing reasons, I would reverse Defendant's conviction for negligent child abuse by endangerment and remand for a new trial in which the jury is entitled to decide whether Defendant committed the third degree felony offense of negligent child abuse by endangerment, or the misdemeanor offense of abandonment of a child. Since the majority disagrees, I dissent.

_____

**MICHAEL E. VIGIL, Judge**

16